UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LESLIE NICOLE ROBERTS,

       Plaintiff,

    v.                                     CASE NO. 8:19-CV-1503-T-MAP

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____/

## ORDER

This is an action for review of the administrative denial of disability insurance benefits (DIB) and period of disability benefits.  *See* 42 U.S.C. § 405(g).  Plaintiff argues that the decision is not supported by substantial evidence because the Administrative Law Judge (ALJ) erred by discounting certain functional limitations identified by consultative examiner Ben Dodsworth, M.D.  After considering the parties' briefs (docs. 19, 20) and the administrative record (doc. 14), I find the ALJ's decision is supported by substantial evidence.  I affirm.[1]

    *A.    Background*

Plaintiff Leslie Roberts was born on November 14, 1974, and was 40 years old on her alleged disability onset date of January 10, 2015. (R. 27)  Plaintiff graduated high school and worked as an assistant manager for the retail store associated with Goodwill Industries Suncoast. (R. 40-41) Plaintiff lives in Mulberry, Florida with her daughter and a friend, who helps care for her. (R. 39-40)

---

[1]  The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

Plaintiff alleges disability due to late onset type 1 diabetes, depression, ADHD, and neuropathy.  After a hearing, the ALJ found that Plaintiff suffers from the severe impairments of "diabetes mellitus; peripheral neuropathy; chronic gastritis with a history of ulcers; and depressive disorder." (R. 20)   But the ALJ determined that Plaintiff is not disabled as she retains the RFC to perform light work.  Specifically,

> [f]unction by function, the claimant remains able to lift and or carry 20 pounds occasionally and 10 pounds frequently; stand 2 hours out of an 8-hour workday, 1 hour at a time; walk 2 hours out of an 8-hour workday, 1 hour at a time; and sit 6 hours in a workday.  She can frequently reach, handle, finger, feel, and push and or pull with the extremities.  She can never climb ladders, ropes, or scaffolds; stoop; kneel; crouch; or crawl.  She can occasionally climb ramps and stairs, and balance.  She can never operate a motor vehicle and she should avoid all exposure to temperature extremes and vibrations.  She should avoid concentrated exposure to hazards, humidity, wetness, and pulmonary irritants.  She is limited to moderate noise environments.  She remains able to perform simple and routine tasks, involving occasional[ ] contact with coworkers, supervisors, and the general public.

(R. 22)  In an August 3, 2018, decision, the ALJ found that, with this RFC, Plaintiff could not perform her past work but could work as a collator operator of a copy machine, a label remover, or a lens inserter. (R. 27-28)  Plaintiff appealed the ALJ's decision to the Appeals Council (AC), which denied review. (R. 2)  Plaintiff, her administrative remedies exhausted, filed this action.

### B.      Standard of Review

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 423(d)(1)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which

are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations. These regulations establish a "sequential evaluation process" to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even

3

if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal."  *Keeton*, 21 F.3d at 1066 (citations omitted).

C.     *Discussion*

1.     *ALJ's consideration of consultative examiner's opinion*

Plaintiff argues the ALJ erred by discounting Dr. Dodsworth's opinion, contained in his medical source statement (MSS), that Plaintiff is limited to occasional fine and gross manipulation, occasional lifting of no more than 10 pounds, and sitting for no more than four hours total in a workday.  The Commissioner retorts that Plaintiff's statements and Dr. Dodsworth's observations during his consultative examination contradict these findings.  I agree with the Commissioner that the ALJ's consideration of Dr. Dodsworth's findings is supported by substantial evidence.

The method for weighing medical opinions under the Social Security Act is found in the regulations at 20 C.F.R. § 404.1527(c).  Relevant here, the opinions of examining physicians are generally given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 404.1527(c)(1-5).  A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

4

This rule – the "treating physician rule" – reflects the regulations, which recognize that treating physicians "are likely to be the medical professionals most likely to provide a detailed, longitudinal picture of . . . medical impairment." 20 C.F.R. § 404.1527(d)(2). With good cause, an ALJ may disregard a treating physician's opinion but "must clearly articulate the reasons for doing so." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (*quoting Phillips v. Barnhart*, 357 at 1240 n.8). Indeed, the ALJ must state the weight given to different medical opinions (those of treating and non-treating physicians) and why. *Id.* Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

At the Commissioner's request, Dr. Dodsworth conducted a consultative examination of Plaintiff in February 2018. (R. 579-89) In his notes from the examination, Dr. Dodsworth states he did not review Plaintiff's past medical records, relying instead on Plaintiff's interview and physical exam. Plaintiff told Dr. Dodsworth she suffers from type 1 diabetes, an overactive thyroid, and leg pain from falling in a gopher hole in 2017. Regarding her diabetes, Plaintiff "does not report how this affects her ability to work," but she stated she gets "regular exercise in the form of cleaning the house." (R. 579) She has severe leg pain when sitting due to her fall. (*Id.*) Plaintiff told Dr. Dodsworth she "can sit for 20 minutes and stand for 15 minutes due to numbness, tingling, pain and neuropathy. She said she can repetitively lift 10 pounds and occasionally lift 15 pounds due to neuropathy. She states she has other limitations with her vision." (R. 580) Plaintiff had 5/5 strength with a noticeable muscle spasm in her lumbar region. (R. 581) She said she occasionally

uses a cane, but Dr. Dodsworth observed her gait to be symmetric and steady with good hand/eye coordination. (*Id*.)

Dr. Dodsworth noted Plaintiff's "[s]ensory examination was decreased in the right thigh, left lower leg, right hand, bilateral feet with pins and needles. The patient's straight leg test was positive at 15 degrees on the right. Tinel's in the right wrist and elbow is positive. Positive FABERs on the right for sacroiliac joint."[2] (R. 582) According to the doctor's examination notes, Plaintiff did not have swollen or tender joints but suffered from lumbar pain. "The patient was able to lift, carry and handle light objects. Patient was able to perform fine motor skills such as opening doors, buttoning shirts, manipulating a coin, etc. Plaintiff was able to squat and rise with ease. Plaintiff was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table." (*Id*.) Plaintiff "admit[ted] to neuropathy in hands, bilateral legs and feet." She had full strength throughout the exam, but Dr. Dodsworth observed decreased sensation in her right hand, right thigh, left lower leg, and both feet. (*Id*.)

The same day as Plaintiff's consultative examination, Dr. Dodsworth completed his MSS (R. 584-89), a check-the-box agency form designed to solicit a doctor's opinion about a claimant's work-related limitations. Dr. Dodsworth opined Plaintiff can occasionally lift and carry up to 10 pounds, sit for four hours total in a workday, stand for two hours total, and walk for two hours total. (R. 584-85) She can occasionally reach, handle, finger, feel, push, and pull with her hands. (R. 586) Dr. Dodsworth checked "occasionally" when asked if Plaintiff can climb stairs and ramps

---

[2] A positive Tinel's test means the patient feels a tingling sensation when the doctor taps a specific nerve. The test is often used to diagnose carpal tunnel syndrome. A positive FABER test is designed to assist diagnosis of pathologies associated with the hip, lumbar, and sacroiliac regions.

(R. 587) but, confusingly, he checked "no" when asked if Plaintiff can climb a few stairs at a reasonable pace with the assistance of a handrail. (R. 589)

After reviewing the medical evidence, the ALJ devoted more than a page of her decision to analyzing the consultative examiner's findings. (R. 24-25)   The ALJ concluded:   "The undersigned accorded moderate to significant weight" to Dr. Dodsworth's MSS and "incorporated most if not all, of the non-exertional limits assessed into the residual functional capacity." (R. 25) She qualified this, however: "The undersigned has also provided for a stand and walk limitation to a total of 4 hours with the need to change position after 1 hour.  However, there is no indication that the claimant is limited to carrying no more than 10 pounds, sitting no more than 4 hours in a workday, that she requires occasional fine and gross manipulative limits." (R. 25)

This finding is supported by substantial evidence.  To begin, as a one-time consultative examiner, Dr. Dodsworth's opinion was not entitled to any special consideration by the ALJ.  In other words, the ALJ did not need to articulate good cause for rejecting Dr. Dodsworth's findings. And although Plaintiff suggests the ALJ should have assigned more weight to Dr. Dodsworth's opinion because he performed his consultative examination at the agency's request, she does not support this argument.

Addressing the weight she can lift, Plaintiff admitted during her examination she can "repetitively" lift 10 pounds (not just "occasionally," as Dr. Dodsworth concluded).  On a function report form, Plaintiff wrote she can "lift approx. 20 pounds."[3] (R. 237)  With this in mind, it was

---

[3] On the same form, she stated she cleans her house every day, does laundry, shops for up to two hours at a time, drives, attends church and visits her mom regularly, and takes care of her dogs, cats, and a pig.

not error for the ALJ to discount Dr. Dodsworth's opinion that Plaintiff can only occasionally lift 10 pounds.

Next is Dr. Dodsworth's finding that Plaintiff can only occasionally use her hands and fingers for gross manipulation. Plaintiff points out that in July 2015, two and a half years earlier, Plaintiff's then-treating neurologist (Thomas DiGeronimo, M.D.) found Plaintiff had decreased sensation in her right hand. (R. 473) Plaintiff was treating with Dr. DiGeronimo for lower back pain, bilateral lower extremity pain, and numbness in her hands. In July 2015, the neurologist increased her Lyrica dose, and Plaintiff reported the next month that her neuropathy had improved. (R. 475-77) Dr. DiGeronimo ordered a lumbar spine x-ray, which was within normal limits. (R. 490) Nerve conduction studies performed in September 2015 at Dr. DiGeronimo's direction showed Plaintiff had mild carpal tunnel syndrome of her right wrist, axonal sensory neuropathy on her right side (a marginal slowing of nerve conduction, as opposed to demyelinating neuropathy), and diabetic neuropathy. (R. 486) In December 2015, Plaintiff's endocrinologist placed her on an insulin pump in an effort to control her diabetes. (R. 523) She reported that her "[h]ypoglycemic episodes are infrequent" in January 2016. (R. 524) It appears they remained so until August 2017, when her insulin pump failed, and she experienced a diabetic ketoacidosis episode that sent her to the emergency room. (R. 624-25) At her hearing, Plaintiff testified that her hands shake, she drops things, and she "sometimes" has trouble with "buttons, bra straps." (R. 52)

Dr. Dodsworth did not review these medical records when he authored his opinion. Notably, on his MSS form, in the space underneath his finding that Plaintiff can only occasionally use her hands for gross manipulation – a space meant for further explanation – Dr. Dodsworth left

it blank.   The only evidence available to him to support his finding was contained in his examination notes.   These notes, however, reveal that Plaintiff was able to lift, handle, and carry light objects and perform fine motor skills.   Additionally, Dr. DiGeronimo found Plaintiff had decreased sensation in her right hand only (a finding Dr. Dodsworth made as well).   Despite this, Dr. Dodsworth did not distinguish between Plaintiff's right and left hands when filling out the MSS – he found her limited on both sides equally.   The ALJ properly discounted Dr. Dodsworth's opinion regarding Plaintiff's ability to manipulate her hands.

Finally, the ALJ discounted Dr. Dodsworth's finding that Plaintiff was limited to only four hours of total sitting in a workday.   Instead, the ALJ's RFC stated Plaintiff could sit up to six hours total.   Substantial evidence supports this conclusion.   Although Plaintiff reported to Dr. Dodsworth that sitting made her leg and back pain worse and that she can only sit for 20 minutes at a time (R. 579-80), she had "full strength throughout" her consultative examination. (R. 583)   She could hop on one foot, squat and rise to a standing position without assistance, and get on and off the exam table easily. (R. 581-83)   At her hearing, Plaintiff testified that her right leg falls asleep if she sits "for too long of a period," (R. 50) but she also testified she goes to the lake with her friend and sits while he fishes and meditates. (R. 58-59) She drives and does errands, sometimes for up to two hours at a time.   She cleans the house daily, does laundry, picks up the yard, and cares for her animals.

Plaintiff's treating physicians (Dr. DiGeronimo and, later, neurologist Hassan Bitar, M.D.) noted in August and December 2015, that Plaintiff's lower extremity pain was helped by an increased Lyrica dose. (R. 473, 576)   And Frank Walker, M.D., a non-examining state agency physician, opined in May 2016 (after reviewing Plaintiff's medical record) that Plaintiff could

perform a full range of medium work, including sitting for six hours. (R. 92)  Although the ALJ assigned "greater weight" to Dr. Dodsworth's opinion than Dr. Walker's (R. 24), the ALJ considered Dr. Walker's opinion along with the rest of the record.  The ALJ stated that her RFC assessment "is supported by clinical and objective findings, opinion evidence from Dr. Dodsworth, and, in part, by the assessments of the State agency medical and psychological consultants and the claimant's allegations." (R. 26)

This dovetails into the final point.  To the extent Plaintiff claims the ALJ erred because her RFC formulation differs from the limitations Dr. Dodsworth identified on his MSS, this is meritless.  Dr. Dodsworth's opinion of Plaintiff's RFC speaks to an issue reserved for the ALJ. *See* 20 C.F.R. § 404.1546(c).  A claimant's RFC is the most work she can do despite any limitations caused by her impairments.  20 C.F.R. § 404.1545(a)(1).  In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence.  20 C.F.R. § 404.1545(a)(2),(e).  An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence.  *McCruter v.  Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence).  Under the statutory and regulatory scheme, however, a claimant's RFC is a formulation reserved for the ALJ, who, of course, must support her findings with substantial evidence.  *See* 20 C.F.R. § 404.1546(c).  At this point in my analysis, I reiterate that, when reviewing an ALJ's decision, my job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings.  *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not

high." *Id.*  I may not reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision.  *See Bloodsworth*, 703 F.2d at 1239.  Considering this, there is substantial evidentiary support for the ALJ's decision to discount the functional limitations assessed by Dr. Dodsworth.

D.    *Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The Commissioner's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on July 15, 2020.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

11